# CHARLESTON.

STATE *ex rel.* E. C. HATFIELD *v.* W. R. FARRAR, MAYOR.

Submitted October 5, 1921.     Decided October 11, 1921.

1. MUNICIPAL CORPORATIONS—*Mayor May Not Suspend Chief of Police, Such Power Being Vested in City Commission.*

   By sec. 42, ch. 20, Acts, 1919, Municipal Charters, jurisdiction and power to suspend the Chief of Police of the City of Williamson is vested in the City Commission; and the Mayor of that city has no authority to suspend or remove him. (p. 233).

2. SAME—*Majority of Qualified Members of Tribunal is Necessary to Quorum, and Not a Majority of all Elected.*

   Under a statutory provision saying in general terms a majority of the members of a public tribunal, composed of a prescribed number of officers, shall be necessary to form a quorum, a majority of its members in office at a given time suffices, and, if there are vacancies, a majority of the whole number elected to membership is not required. (p. 234).

3. SAME—*Removal of Members of Tribunal Does Not Ipso Facto Create Vacancy and He must be Included in Determining Necessary Number for Quorum.*

   Upon the assumption that a member of a city commission composed of elected members renders himself ineligible longer to hold his position, by removal from the city and state, after induction into office, such removal does not *ipso facto* create a vacancy, and a majority of those in office at the time including such member is required to constitute a quorum. (p. 234).

4. SAME—*There is No Vacancy for Disqualification Until Vacancy Has Been Declared by Quorum.*

   In such case, there is no vacancy until the fact of disqualification shall have been ascertained and determined and the vacancy declared by a quorum so constituted. (p. 235).

5. SAME—*Resolution by Majority of Commission After Excluding One Disqualified and Reciting Vacancy Held Void.*

   An order or resolution adopted by a majority of the members of such commission after excluding such member from

the count, and reciting vacancy in his office, by reason of such
removal, is void on its face.  (p. 235).

Original proceeding by the State, on the relation of E. C.
Hatfield, against W. A. Farrar, Mayor, for peremptory writ
of mandamus to restore relator to the office of Chief of Police
of the City of Williamson.

*Writ awarded.*

*Joe P. Hatfield, Jno. T. Simms,* and *John B. Morrison,* for
relator.

*Douglas W. Brown,* for respondent.

POFFENBARGER, JUDGE:

The relator seeks a peremptory writ of mandamus to re-
store him to the office of Chief of Police of the City of Wil-
liamson, from which an order issued by the Mayor of that
city purports and attempts to suspend him.

By the charter of the city, ch. 14, Acts of 1915, Municipal
Charters, as amended by ch. 20, Acts of 1919, Municipal
Charters, the jurisdiction to suspend that officer is vested in
the commission of six members, which governs the city.  See
sec. 42 of Act of 1919.  No provision of the present charter
empowers the mayor to do so

As the law of the city  formerly was, it seems the mayor
was empowered by a valid ordinance, to remove the chief of
police from office, and the amendatory act of 1915, Municipal
Charters, continued in effect all ordinances then in force
and not inconsistent with the provisions of that act, until
amended or repealed.  That statute put the power of sus-
pension of the chief of police in the city manager.  This of
necessity impliedly repealed the ordinance.  The act of 1919,
amending the act of 1915, puts that power in the commission.
Hence, lack of authority in the mayor to suspend the relator,
is clear.

Any implication of such authority in him, arising out of
the general powers conferred upon him, is excluded by this
express provision.  A mere unnecessary implication cannot
stand against express terms inconsistent therewith.  More-
over, it is very unusual to place a power of appointment or

amotion in the hands of two distinct officers or tribunals. In such case, there would be an inevitable conflict of authority, often leading to trouble between the repositories of such power and public embarrassment.

The return, however, sets up removal of the relator by the commissioners, between the issuance of the alternative writ and the return thereof, by a resolution or order passed or adopted by three of them, claiming to have acted in a meeting at which, under the circumstances, they constituted a quorum. The commission, theoretically, is by-partisan. In the return, it is asserted that, ordinarily, no meeting could be held, in the absence of any of the members representing one of the political parties, because neither of the other two would attend. Now it is claimed one of those three has resigned, abandoned or forfeited his office, by removal from the city and the state. The three members of the other party, deeming themselves then to be a sufficient number to constitute a quorum, held a meeting, declared vacant the office of the migrating member, and passed the resolution above mentioned, and here interposed as a defense.

If the resolution was passed in a duly constituted meeting of the commissioners, it would no doubt bar the relief sought because the award of the writ would be fruitless and unavailing. *Hall* v. *Staunton*, 55 W. Va. 684. As the resolution, if valid, would make the writ useless and futile, the objection to the filing thereof, on the ground of its adoption after award of the alternative writ, is untenable. But, if the meeting in which it was adopted was not duly constituted and could not validly do what it undertook to do, the objection can be sustained on the ground of invalidity of the resolution. The vital question, then is whether the three members constituted a quorum.

As the charter provision respecting a quorum is general, simply saying a majority of the commissioners shall be necessary to form a quorum, Act, 1915, sec. 15, the presence of three sufficed, if the commission was then composed of only five members. *State* v. *Huggins,* Harp. (S. C.) 139; *Coles* v. *Williamsburgh,* 10 Wend. (N. Y.) 659; *State* v. *Wilkesville Tp.,* 20 O. St., 288; 29 Cyc. 1688. Otherwise it did not. If

removal of commissioner Sammons ˙ from the city ˙and the State *ipso facto* put an end to his membership of the tribunal, it consisted of only five members, at the date of the meeting, but, if it did not so terminate his membership, and, action of the commission was necessary to its termination upon that ground, the commission then consisted of six members, and attendance of four was required for a quorum.

In the absence of positive legal provisions indicative of intention to adopt a different rule on the subject, a vacancy in office occurs by, (1) expiration of the term, or, (2) death of the incumbent, or, (3) his resignation, or, (4) his removal from office. McQuillen, Mun. Cor. sec. 478. This author adds two more, abolition of the office and disqualification of the incumbent to hold it. The first of these two is an impossibility. There can be no vacancy in a non-existent office. The other is disqualification by express legislation. *People* v. *Highland Park*, 88 Mich. 653; *People* v. *Morrell*, 21 Wend. (N. Y.) 575. Likely Judge Christian thought a vacancy occasioned by death of the incumbent was too apparent for mention, when he said, in the *Bland and Giles County Judge Case*, 33 Gratt. 443, that "An office is determined *proprio vigore* by resignation, expiration of the term and removal by competent authority. But in other cases the office is not determined *ipso facto* by the occurrence of the cause. There must be a judgment of *amotion* after *a judicial ascertainment* of the fact." This language is partially quoted with approval in *Johnson* v. *Mann et al.*, 77 Va. 265, 270.

In parliamentary law, which governs in cases of the class to which this one belongs, an office is vacated by refusal of the elected member to accept it, communicated to the proper authorities; refusal to qualify; resignation; and death. In all other instances, such as expulsion, adjudication of a controverted election, disqualification by act of the party and acceptance of an incompatible office, ascertainment of the fact and declaration of the existence of the vacancy are necessary. Cush. L. & Pr. Leg. Assemblies, secs. 471 to 478, inclusive. Application of this rule to the case now under consideration harmonizes with our decisions in those cases in which persons elected to municipal offices are alleged to be ineligible. They

are admitted, subject to inquiry and determination of the question of their eligibility. *Price* v. *Fitzpatrick*, 85 W. Va. 76; *Trunick* v. *Town of Northview*, 80 W. Va. 9. As to the fact of disqualification by removal from the subdivision in which an officer holds his position, he is entitled to be heard, if he desires a hearing. He must have notice, if it can be conveniently given, and be allowed his "Day in court," and he cannot be deemed to be out unless nor until he shall have had these privileges.

Upon these principles and conclusions, the writ asked for was awarded.

*Writ awarded.*